# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| EXECUTIVE CENTER III, LLC, <br><br> Plaintiff, <br><br> v. <br><br> ANDREW MEIERAN and <br> ANDREW MEIERAN FAMILY <br> TRUST <br><br> Defendants. | Case No. 10-CV-263-JPS <br><br><br><br> ORDER |

   In March of 2010, the plaintiff filed a complaint against the defendants alleging that they had received fraudulent transfers from BRIC Executive, LLC ("BRIC"). (Docket #1). BRIC, a real estate holding company, transferred $400,000 to the defendants, former partial owners of BRIC, allegedly in satisfaction of a debt. (Def.'s Reply, 2). Unfortunately, this transfer left BRIC unable to pay amounts they owed to plaintiff under a real estate sale contract. (Compl. ¶¶ 14–37).

   Now, the plaintiff alleges that BRIC's transfer to the defendants was improper, as it made BRIC insolvent and unable to pay its debts to plaintiff. (Compl., ¶¶ 14–37). Thus, the plaintiff seeks to have the defendants held liable for BRIC's debts to the plaintiff. (*Id.*)

   Discovery has now taken place, and the parties have fully briefed the issues raised in the defendants' May 10, 2011 Motion for Summary Judgment. (Docket #33).

   With the benefit of the parties' submissions, together with the analysis that follows, the motion before the Court will be granted in part and denied in part.

1. FACTUAL BACKGROUND

   1.1 General Background

   1.1.1 Defendants' Association with BRIC

On November 1, 2007, the defendants bought a 12.5% interest in BRIC, and simultaneously entered into an agreement to liquidate that interest by March 1, 2008. (Pl.'s Resp., 2; Def.'s Reply, 2). There were two parts to the November 1, 2007 agreement between BRIC and the defendants. (Pl.'s Resp., 2; Def.'s Reply, 2). The first part, the Assignment of Membership Interest, gave defendants a 12.5% interest in BRIC in exchange for $250,000. (Pl.'s Resp., 2; Def.'s Reply, 2). BRIC and defendants contemporaneously agreed to the second part, called the Amendment. (Compl., ¶ 6). The Amendment provided the following:

(1) any of BRIC's net income would be applied to repaying the defendants' $250,000 investment until the defendants' interest was liquidated;

(2) the defendants' were to receive a 12% per-annum preferred return on their investment;

(3) by March 1, 2008, BRIC would pay a liquidating distribution to the defendants in redemption of the 12.5% interest; and

(4) if BRIC did not meet the March 1, 2008 deadline, it would be required to pay additional penalties to the defendants.

(Pl.'s Resp., 2–3; Def.'s Reply, 2).

In summary, on November 1, 2007, BRIC contractually agreed to redeem defendants' 12.5% interest by March 1, 2008.

### 1.1.2 Plaintiff's Agreement with BRIC

Approximately a year-and-a-half after BRIC agreed to the Assignment and Amendment with the defendants, the plaintiff began negotiating with BRIC to purchase an office building in Brookfield, Wisconsin. Plaintiff alleges that on June 5, 2008, BRIC agreed to sell the building – its primary asset – to the plaintiff. (Compl., ¶ 5).

Plaintiff also alleges that, under the terms of the sale agreement, BRIC agreed to a three-year lease of office space from the plaintiff. (Compl., ¶ 8). The lease term was expected to begin on or about the final date of sale, September 5, 2008, and bring approximately $167,000 to the plaintiff. (Compl., ¶ 11).

On September 5, 2008, the sale closed. plaintiff paid approximately $1.3 million to purchase the building from BRIC. (Compl., ¶ 11).

### 1.1.3 BRIC's Insolvency and Transfer of Assets to Defendants

Using the $1.3 million it received, BRIC paid off several debts, leaving itself unable to pay the rent due to plaintiff under the sale contract.

Most importantly, BRIC paid $400,000 to the defendants on the date the sale closed. The defendants allege that BRIC paid the $400,000 in satisfaction of amounts owed to the defendants under the November 1, 2007 Assignment and Amendment. (Def.'s Br. in Supp., 3). Because BRIC had not paid the $250,000 due on March 1, 2008, penalties began to apply. (Pl.'s Resp., 3; Def.'s Reply, 3). This resulted in BRIC owing approximately $435,000 to the defendants as of August 31, 2008. (Pl.'s Resp., 3; Def.'s Reply, 3). To deal with this debt, on August, 28, 2008, BRIC agreed to pay the defendants $400,000 at the closing of the sale. (Compl. ¶ 7).

Thus, on September 5, 2008, upon the sale closing, BRIC paid $400,000 to the defendants. (Pl.'s Resp., 3; Def.'s Reply, 3).

BRIC also owed substantial sums on other debts, ultimately making it unable to afford to pay the amounts owed to plaintiff under the lease-back term of the sale agreement. (Compl., ¶ 11). After the payment to the defendants, BRIC had only $697,358 remaining from the sale. (Compl. ¶ 11). That money constituted BRIC's only assets. (Compl. ¶ 11). Plaintiff alleges that BRIC paid $516,860 to release a second mortgage on the building and an additional $144,898 on other liabilities. (Compl., ¶ 11).

Having pledged its money elsewhere, BRIC never paid any of the amounts due to plaintiff under the sale agreement. (Compl., ¶ 12). BRIC defaulted on the sale agreement almost immediately, failing to pay even its first rent payment due October 1, 2008. (Compl., ¶ 13).

Plaintiff then sought and received a money judgment against BRIC from the Waukesha County, Wisconsin state court. (Compl., ¶ 13). Plaintiff's judgment against BRIC is for $152,139. (Compl., ¶ 13).

### 1.1.4 Plaintiff's Filing of This Suit

Being insolvent, BRIC never paid on the plaintiff's judgment. Thus, plaintiff followed the money and came upon the defendants, who had received $400,000 immediately after the close of the sale. (Pl.'s Resp., 3; Def.'s Reply, 3). The plaintiff was understandably concerned that the defendants – partial owners of BRIC – had been paid a substantial sum of money, while the plaintiff was left without.

Thus, on March 26, 2010, the plaintiff filed this suit, challenging the transfer from BRIC to the defendants as fraudulent, and seeking an award of damages against the defendants. The plaintiff alleges that, in accepting the $400,000 transfer, the defendants: (1) violated several portions of Wisconsin's

Uniform Fraudulent Transfer Act, Wis. Stat. § 242.01, *et seq.*; (2) breached a fiduciary duty they owed to the plaintiff; and (3) benefitted from inequitable preference. (Compl. ¶¶ 14–37).

The case was filed in this judicial district on the basis of diversity jurisdiction. (Compl. ¶ 1 (citing 28 U.S.C. § 1332); Ans. ¶ 1). The plaintiff is a Wisconsin business with total diversity from the defendants, who are residents of California. (Compl. ¶ 1; Ans. ¶ 1). And, because the amount in controversy is approximately $150,000, plus interest costs – exceeding the $75,000 required by statute for diversity – the Court can hear this case. (Compl. ¶ 1 (citing 28 U.S.C. § 1332); Ans. ¶ 1).

1.2.    Admissible Evidence for Summary Judgment

The parties in this action have reached an agreement on several material facts in the case. (*See* Def.'s Reply 1–3; Pl.'s Resp. 2–6). The defendants outlined these agreed upon in their Reply Brief, and the Court now recounts them. (*See* Def.'s Reply 1–3; Pl.'s Resp. 2–6).

The parties agree on a substantial number of the facts that underlie the transactions between BRIC and the defendants. Importantly, both parties agree on the facts relating to the creation and terms of the November 1, 2007 Agreement and Amendment. (Def.'s Reply 2; Pl.'s Resp. 2–3). They also agree that BRIC did not pay any money in satisfaction of the Amendment by March 1, 2008, and that no payments were made by BRIC to the defendants until September 5, 2008. (Def.'s Reply 2; Pl.'s Resp. 3). The parties have also agreed that the defendants reassigned the 12.5% membership interest to BRIC on September 5, 2008. (Pl.'s Resp. 4). Finally, in reference to the financial relationship between BRIC and the defendants, the parties have agreed that BRIC owed $435,000 to the defendants as of August 31, 2008, pursuant to the Amendment. (Def.'s Reply 3; Pl.'s Resp. 3).

As to the relationship and transactions between the plaintiff and BRIC, the parties agree only that plaintiff is a creditor of BRIC. (Def.'s Reply 2; Pl.'s Resp. 2.

However, based upon the submitted affidavits, pleadings by the parties, and discovery responses, the Court is able to make additional findings of fact relating to BRIC's dealings with the plaintiff. The Court finds that BRIC agreed to a three-year lease from the plaintiff. (D. Heyes Aff. ¶ 6; P. Heyes Aff. ¶ 7; Ex. C, § 9.01(c)).

The Court can also look to the submissions of the parties and determine that BRIC became insolvent shortly after the September 5, 2008 sale. It sold its only asset, the office building, on September 5, 2008; after that point, BRIC immediately transferred $400,000 to defendants, leaving it with debts that exceeded its assets. (D. Heyes Aff. ¶ 8; P. Heyes Aff. ¶¶ 7–9). Thus, as of September 5, 2008, BRIC was insolvent. (P. Heyes Aff. ¶¶ 7–8).

Finally, from the submissions of the parties, the Court also determines that the defendants' 12.5% interest was not worth $250,000 or $400,000 as of the September 5, 2008 transfer. (Nordholm Aff. ¶¶ 3–5; Admitted Fact #28–29)

2.  DISCUSSION

   2.1   Summary Judgment Standard

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Thomas v. H&R Block Eastern Enters.*, 630 F.3d 659, 663 (7th Cir. 2011); Fed. R. Civ. P. 56(a).

A "genuine issue of material fact" exists only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To be "genuine," the

issue must create more than "some metaphysical doubt as to the material facts." *Matushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Further, it is only when the facts are "material" and "might affect the outcome of the suit under the governing law," that summary judgment is inappropriate. *Anderson*, 477 U.S. at 248.

In deciding a summary judgment motion, the Court must construe all facts and draw all reasonable inferences in favor of the nonmoving party. *Thomas*, 630 F.3d at 663; *Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 545 (7th Cir. 2008). The nonmoving party cannot simply rely on mere allegations or denials of the pleadings, though. *Anderson*, 477 U.S. at 256. Rather, the nonmoving party must present genuine, admissible evidence to show that a factual issue exists that would preclude summary judgment on an issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

2.2   Plaintiff's Claims

The plaintiff raises five claims, alleging that the defendants: (1) received a fraudulent transfer in violation of Wis. Stat. § 242.04(1)(b); (2) received a fraudulent transfer in violation of Wis. Stat. § 242.05(2); (3) received a fraudulent transfer in violation of Wis. Stat. 242.05(1); (4) breached a fiduciary duty it owed to the plaintiff; and (5) received the transfer as a result of inequitable preference due to its position as a partial owner of BRIC. (Compl. ¶¶ 14–37).

As discussed below, only the plaintiff's fourth claim presents a genuine issue of material fact that should be decided at trial. As such, the Court must grant summary judgment on the remaining claims.

### 2.2.1 Fraudulent Transfer in Violation of Wis. Stat. § 242.04(1)(b)

According to Wis. Stat. § 242.04(1)(b), a transfer should be considered fraudulent if the following factors exist:

(1) there was a transfer made by the debtor to another party;

(2) the debtor did not receive a reasonably equivalent value in exchange for the transfer; and

(3) the debtor was insolvent at the time of the transfer (or was about to engage in business for which its remaining assets were unreasonably small).

In this case, both the first and the third factors are satisfied. The debtor (BRIC) did make a transfer to the Defendant. (D. Heyes Aff. ¶¶ 7–8; P. Heyes Aff. ¶ 7). BRIC was also insolvent under the terms of Wis. Stat. § 242.04(1)(b)(2), because the transaction resulted in it being unable to pay its debts. (D. Heyes Aff. ¶ 7; P. Heyes Aff. ¶¶ 7–9).

Having shown the first and third factors, plaintiff can escape summary judgment on its claim if a genuine issue of material fact exists as to the second factor: whether BRIC received reasonably equivalent value in exchange for its transfer to the defendants.

The term "reasonably equivalent value" is not defined in Wisconsin's Uniform Fraudulent Transfers Act (WUFTA), under which the plaintiff's statutory claims arise. *See* Wis. Stat. § 242.01, *et seq.* However, looking to other definitions found in the WUFTA statutes, as well as the plain language of the statute, the Court can determine the term's meaning. *See, e.g., U.S. v. Riverside Bayview Homes*, 474 U.S. 121, 139, n.11 (1985) (stating that, to formulate a construction for an otherwise undefined term, a court may look

to other terms found elsewhere in an act; this rule of statutory construction is known as *in pari materia*); *Wisconsin v. Magnuson*, 2000 WI 19, ¶ 26, 233 Wis. 2d 40, 49; 606 N.W.2d 536, 540 (not limiting the definition of a term to its specific subsection, but instead looking to related statutes).

Looking to the term's plain meaning and other similar statutes, the Court determines that BRIC received "reasonably equivalent value" in exchange for the $400,000 it transferred to the defendants. WUFTA defines "value" as including the satisfaction of "antecedent debt." Wis. Stat. § 242.03. It also defines "debt" to mean "any liability on a claim"; it then goes further to define "claim" to mean "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." Wis. Stat. §§ 242.01(5), (3).

Thus, extrapolating from those definitions, it is clear that BRIC received reasonably equivalent value so long as, in exchange for the $400,000 it transferred, the defendants forgave:

(1) a "claim," broadly-defined under Wis. Stat. § 242.01(3);

(2) that arose antecedent to the transfer; and

(3) that is "reasonably equivalent," to the value of the transfer.

All three of these conditions were satisfied here. First, in exchange for the $400,000 BRIC transferred to the defendants, the defendants forgave a "claim" they had against the defendants. While that claim was not reduced to a judgment at the time of the transfer, there is no dispute that BRIC owed over $400,000 to the defendants on August 31, 2008. (Pl.'s Resp. 3; Def.'s Reply 3). That $400,000 claim was fixed and matured as of March 1, 2008, simply due to the agreement that BRIC entered with the defendants under

the Amendment. As such, the defendants forgave a "claim" against BRIC in exchange for the $400,000 transfer.

Second, the defendants' claim arose antecedent to the transfer. "Antecedent," by its plain term, means "earlier." *Black's Law Dictionary* (9th ed. 2009). The defendants' claim against BRIC arose on March 1, 2008, when it matured according to the terms of the Amendment. Thus, the claim arose prior to any of BRIC's transactions with the plaintiff. Thus, the forgiven claim was antecedent.

Third, the value of the transfer was "reasonably equivalent" to the value of the forgiven claim. "Reasonably equivalent," by its plain terms, simply means approximately "equal in value." *Id.* In this case, the defendants' claim against BRIC was for $435,000; in exchange for forgiving those claims, defendants received $400,000 in cash. While a claim for $435,000 against a near-insolvent company may not have an exact cash value of $400,000, the comparability of value of the forgiven debt to the cash transferred persuades this Court that the two were reasonably equivalent.

It is also important to note that the plaintiff argues that the purpose behind BRIC's $400,000 payment to the defendants was made solely as a redemption of shares, and not in satisfaction of any debt that arose under the Amendment. (Pl.'s Resp., 3). The evidence establishes that this assertion is incorrect. While BRIC *did* redeem the defendants' shares, that redemption was part of the original agreement under the Amendment. (Pl.'s Resp. 2–3; Def.'s Reply 2). The simple fact that the Amendment called for a redemption of shares does not mean that the defendants' right to $400,000 is something other than a claim. The defendants still had a "claim," under the broad definition of that term that is found in WUFTA. Wis. Stat. § 242.01(3).

Thus, finding no genuine issues of material fact that relate to plaintiff's claim under Wis. Stat. § 242.04(1)(b) or – more specifically – to the issue of "reasonably equivalent value," the Court will grant the defendants' Motion for Summary Judgment on the plaintiff's first claim.

### 2.2.2 Fraudulent Transfer in Violation of Wis. Stat. § 242.05(2)

Both parties have agreed that the plaintiff's second claim, arising under Wis. Stat. § 242.05(2), should be dismissed as it is time-barred. (Def.'s Br. in Supp. 4–5; Pl.'s Resp. 12).

The Court agrees, and thus will grant defendants' Motion for Summary Judgment on plaintiff's second claim.

### 2.2.3 Fraudulent Transfer in Violation of Wis. Stat. § 242.05(1)

According to Wis. Stat. § 242.05(1), a transfer should be considered fraudulent if the following conditions are met:

(1) there was a transfer made by a debtor to another party;

(2) the creditor's claim against the debtor arose before the transfer;

(3) the debtor made the transfer without receiving reasonably equivalent value in exchange for the transfer; and

(4) the debtor was insolvent at the time of the transfer.

Here, plaintiff raises no issues of material fact. It argues that its claims against BRIC arose before the transfer. (Pl.'s Resp. 10–11). Ultimately, the timing of the transfer is not a material fact, though, because the transfer does

not satisfy the third factor to be considered fraudulent: BRIC did not make the transfer for less than reasonably equivalent value. *See* Section 2.2.1, *infra*.

Therefore, the Court will grant the defendants' Motion for Summary Judgment on the plaintiff's third claim.

### 2.2.4 Breach of Fiduciary Duty

In deciding whether to grant summary judgment on the plaintiff's fourth claim, the Court must answer two separate questions: first, whether common law duties apply to Wisconsin LLCs; and, second, if those common law duties do apply, whether any issues of material fact relating to the breach of those duties are in dispute.

The Court finds that common law duties do apply to Wisconsin LLCs and that issues of material facts remain that relate to the defendants' breach of those duties. Therefore, the Court must deny the defendants' Motion for Summary Judgment on the plaintiff's fourth claim.

#### 2.2.4.1 Application of Common Law Fiduciary Duties to Wisconsin LLCs

The plaintiff argues that the defendants violated common law fiduciary duties when it accepted BRIC's payment of $400,000. (Compl. ¶¶ 27–33).

The defendants' first line of defense against this claim is to argue that common law fiduciary duties do not apply to LLCs in Wisconsin. (Def.'s Br. in Supp. 5–6; Def.'s Reply 4–5). defendants make a number of arguments on this point. First, citing *Gottsacker v. Monnier*, the defendants argue that the Wisconsin Supreme Court has held that common law fiduciary duties do not apply to Wisconsin LLCs because LLCs are purely statutory creatures that have their duties defined entirely by statute. (Def.'s Br. in Supp. 5–6 (citing *Gottsacker v. Monnier*, 2005 WI 69 ¶ 45, 281 Wis. 2d 361, 385, 697 N.W.2d 436,

447); Def.'s Reply 4–5 (citing same)). Second, the defendants cite the statutes that relate to duties that LLCs owe to third parties. (Def.'s Br. in Supp. 6 (citing Wis. Stat. §§ 183.0304, 183.0502, 183.0608); Def.'s Reply 5 (citing Wis. Stat. § 183.0304)). The defendants point out that none of those LLC statutes expressly state that common law fiduciary duties will apply to LLCs, with the exception of Wis. Stat. § 183.0304's incorporation of veil-piercing principles into LLC duties. (Def.'s Br. in Supp. 6 (citing Wis. Stat. §§ 183.0304, 183.0502, 183.0608); Def.'s Reply 5 (citing Wis. Stat. § 183.0304)).

While the defendants raise some good points, the Court must ultimately disagree with them, and find that common law fiduciary duties *do* apply to LLCs in Wisconsin.

To begin, the Court notes that there is no statutory or common law in Wisconsin that expressly incorporates common law fiduciary duties against LLCs. Contrary to the defendants' assertions, *Gottsacker* does not hold that LLCs are exempt from all common law fiduciary duties. 2005 WI 69 ¶ 37, 281 Wis. 2d at 381, 697 N.W.2d at 446. Rather, that case dealt with a number of fact-specific issues relating to the operation of an LLC – none of which specifically apply to this case. *See Id.*, 2005 WI 69 ¶¶ 20–37, 281 Wis. 2d at 373–381, 697 N.W.2d at 442–446.

In reaching its decision, the *Gottsacker* court discussed the recently-created LLC business form, making many comparisons between it and corporations and partnerships. *Id.*, 2005 WI 69, ¶¶ 14–19, 281 Wis. 2d at 370–373, 697 N.W.2d at 440–442. But the *Gottsacker* court never expressly stated that common law fiduciary duties relating to partnership and corporations should apply to LLCs. *See Id.*

On the other hand, though, it also did not explicitly state that those duties would *not* apply to LLCs. *See Id.* Only Justice Roggensack, in her

concurrence, makes any statement that could be construed to be so far-reaching. *See Id.*, 2005 WI 69 ¶ 45, 281 Wis. 2d at 385, 697 N.W.2d at 447. She stated that "the rights and obligations of a limited liability company to its members, of the members to the limited liability company and to each other are set by [statute]. Common law concepts such as the fiduciary duty of a majority shareholder of a corporation to a minority shareholder are replaced by statutory obligations." *Id.* (citing Wis. Stat. §§ 183.0402, 183.1302(3)).

For two reasons, this Court believes that Justice Roggensack's statement does not prevent application of all common law fiduciary duties to LLCs. First, as noted above, her statement was made as a part of a concurrence, and thus is not a part of the holding of the *Gottsacker* court. 2005 WI 69 ¶ 45, 281 Wis. 2d at 385, 697 N.W.2d at 447. And, second, Justice Roggensack mentioned only common law duties regarding the relations between interior members (majority and minority shareholders) – she never definitively stated that common law fiduciary duties regarding third parties have been abrogated by statute. *Id.*

A further search of Wisconsin case law does not reveal any cases that have delved deeper into the common law fiduciary duties of LLCs.

Thus, the Court is unable to find that any common law expressly prevents application of common law fiduciary duties to LLCs.

Similarly, the Court finds that the existence of LLC statutes does not necessarily mean that common law fiduciary duties do not apply to LLCs. The defendants argue that, because LLCs are creatures of statute with certain duties defined by statute, common law fiduciary duties have been totally abrogated. (Def.'s Br. in Supp. 6 (citing Wis. Stat. §§ 183.0304, 183.0502, 183.0608); Def.'s Reply 5 (citing Wis. Stat. § 183.0304)).

The Court is not so convinced. As the *Gottsacker* court noted, LLCs share much in common with corporations. 2005 WI 69, ¶¶ 14–19, 281 Wis. 2d at 370–373, 697 N.W.2d at 440–442. Like LLCs, corporations are creatures of statute. Wis. Stat. § 180.01, *et seq.* Additionally, the statutes impose duties upon corporate officers and directors. Wis. Stat. §§ 180.0801, 180.0841. Nonetheless, corporations are considered to have common law fiduciary duties. *See Beloit Liquidating Trust v. Grade*, 2004 WI 39 ¶ 37, 270 Wis. 2d 356, 380, 677 N.W.2d 298, 310.

Thus, the Court is unable to conclude that common law fiduciary duties ought not apply to LLCs because of the mere existence of statutes relating to the creation and duties of LLCs.

In fact, there is growing consensus that common law fiduciary duties should apply to the operations of LLCs. *See, e.g.*, *Credentials Plus, LLC v. Calderone*, 230 F. Supp. 2d 890, 899 (N.D. Ind. 2002) ("Indiana LLCs, being similar to Indiana partnerships and corporations impose a common law fiduciary duty on their officers and members in the absence of contrary provisions in LLC operating agreements."); *Purcell v. S. Hills Invs., LLC*, 847 N.E.2d 991, 997 (Ind. Ct. App. 2006) ("In line with the district court's opinion in *Credentials Plus*, we now hold that common law fiduciary duties, similar to the ones imposed on partnerships and closely-held corporations, are applicable to Indiana LLCs."); *Patmon v. Hobbs*, 280 S.W.3d 589, 594 (Ky. Ct. App. 2009) (stating "this Court finds that Kentucky limited liability companies, being similar to Kentucky partnerships and corporations, impose a common-law fiduciary duty on their officers and members in the absence of contrary provisions in the limited liability company operating agreement."); *Gottlieb v. Kest*, 141 Cal. App. 4th 110, 152 (Cal. App. 2d Dist. 2006); *People v. Pacific Landmark, LLC*, 129 Cal.App.4th 1203, 1211–1216 (Cal.

App. 2d Dist. 2005); *Maxemus Entertainment, LLC v. Josey*, 35 Conn.L.Rptr. 454, p.*3 & fn. 4 (Super.Ct. 2003)(applying Rest.2d Judgments, § 59(3)(a) to limited liability companies); *Bushi v. Sage Health Care, PLLC*, 203 P.3d 694, 699 (2009); Sandra K. Miller, *What Fiduciary Duties Should Apply to the LLC Manager After More Than a Decade of Experimentation?*, 32 Iowa J. Corp. L. 565, 611-612 (taking issue with Justice Roggensack's *Gottsacker* concurrence). *But see WAKA, LLC v. Humphrey*, 2007 Va. Cir. LEXIS 96, at *9–*10 (May 2, 2007).

Logic dictates the same. Fiduciary duties exist to protect people who are affected by the actions of those who control businesses. *See Id.*, 2004 WI 39 ¶¶ 33–39, 270 Wis. 2d 378–380, 677 N.W.2d 309–310. Therefore, it would not make any sense if the expectation for a business to act fairly were to be different simply due to the business owners' choice of form – an LLC, in this case. If that were so, every dishonest owner could simply elect to operate its business as an LLC and claim that no fiduciary duties applied to its actions.

For these reasons, the Court finds that common law fiduciary duties apply to LLCs.

### 2.2.4.2 Material Facts in Dispute Regarding Defendants' Fiduciary Duties

The defendants owed a common law fiduciary duty to the plaintiff if two conditions existed at the time of the transfer:

(1) the company in question was insolvent; and

(2) the company had ceased to act as a going concern.

*Beloit Liquidating Trust*, 2004 WI 39 ¶ 37, 270 Wis. 2d at 380, 677 N.W.2d at 310.

As discussed above, the Court has already found that BRIC was insolvent at the time of the transfer – therefore, the first factor is satisfied. (D. Heyes Aff. ¶ 8; P. Heyes Aff. ¶¶ 7–9).

As to the second factor, even the defendants concede that there is an issue of fact raised by the affidavits. (Def.'s Reply 4; Pl.'s Resp. 4 (citing D. Heyes Aff. 8; P. Heyes Aff. 9)). In their reply brief, the defendants explicitly state that "the affidavits submitted by [P]laintiff create an issue of fact concerning whether BRIC was a going concern as of September 5, 2008." (Def.'s Reply 4).

That issue is material, because it "might affect the outcome" of this suit. *Anderson*, 477 U.S. at 248. Depending on the date at which BRIC ceased to act as a going concern, the plaintiff's fiduciary duty claim may fail. But, as the parties seem to agree, there is an issue of fact on this matter, over which a reasonable jury could return a verdict for the plaintiff. (*See* Def.'s Reply 4; Pl.'s Resp. 4 (citing D. Heyes Aff. 8; P. Heyes Aff. 9)).

Summary judgment is inappropriate on this claim, because genuine issues of material fact remain. Therefore, the Court must deny the defendants' Motion for Summary Judgment on the second claim.

### 2.2.5 Inequitable Preference

As the defendants point out and the plaintiff concedes, Wisconsin does not recognize inequitable preference claims. (Def.'s Br. in Supp. 7; Pl.'s Resp. 14–15). This Court will not be the first to apply an inequitable preference claim under Wisconsin law; therefore, the Court will grant defendants' Motion for Summary judgment in relation to this claim.

The plaintiff urges this court to follow the lead of another jurisdiction that recognizes an inequitable preference claim. (Pl.'s Resp. 14–15 (citing *Poe v. Emberton*, 438 So.2d 1082 (1983))).

The Court will not take such a step. To begin, there are no Wisconsin cases that discuss an inequitable preference claim with approval. Further, the plaintiff fails to cite adequate case law to persuade this Court that an

inequitable preference claim is either widely accepted or a wise course of action that this Court should take. (*See* Pl.'s Resp. 14–15). In the Court's own research, it has not found anything to the contrary. The Court has not identified a majority – or even a trend – of jurisdictions that recognize inequitable preference claims in similar cases. Thus, the Court is not under obligation to consider such a claim and finds no reason to do so.

Finally, the Court should note the reasons it found it appropriate to look to extraterritorial case law in recognizing a fiduciary duty claim, but declined to do so in relation to the inequitable preference claim. First, a genuine issue relating to the fiduciary duties of LLCs seems to exist in Wisconsin law, while there has been practically no discussion of an inequitable preference claim. The Wisconsin Supreme Court raised the fiduciary duty issue to an extent, in *Gottsacker*, but did little to clear up the issue. 2005 WI 69, ¶¶ 14–19, 37, 281 Wis. 2d at 370–373, 381, 697 N.W.2d at 440–442, 446. On the other hand, Wisconsin courts have not raised the issue of inequitable preference in over 100 years. *See Ford v. Plankinton Bank*, 87 Wis. 363, 58 N.W. 766 (1894); *Powers v. C.H. Hamilton Paper Co.*, 60 Wis. 23; 18 N.W. 20 (1884); *Levy v. Martin*, 48 Wis. 198, 4 N.W. 35 (1880). Second, there is a broad body of case law and scholarly discussion on whether common law fiduciary duties should apply to LLCs. *See* Section 2.2.4.1, *infra.* On the other hand, there is little discussion of application of inequitable preference claims to facts such as those presented here.

For these reasons, the Court is confident that it should not be the first to apply an inequitable preference claim under Wisconsin law.

Therefore, the Court will grant defendants' Motion for Summary Judgment on the plaintiff's fifth claim.

3.  CONCLUSION

For the foregoing reasons, the defendants' Motion for Summary Judgment is granted in part and denied in part.

Accordingly,

IT IS ORDERED that the defendants' Motion for Summary Judgment (Docket #33) be and the same is hereby GRANTED in part, with respect to plaintiff's first, second, third, and fifth claims;

IT IS FURTHER ORDERED that the defendants' Motion for Summary Judgment (Docket #33) be and the same is hereby DENIED in part, with respect to plaintiff's fourth claim.

Dated at Milwaukee, Wisconsin, this 4th day of October, 2011.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge