UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

EXECUTIVE CENTER III, LLC,

                Plaintiff,

v.

ANDREW MEIERAN, and
ANDREW MEIERAN FAMILY TRUST,

                Defendants.

Case No. 10-CV-263-JPS

ORDER

---

The plaintiff, a creditor of BRIC Executive, LLC ("BRIC"), filed this suit against the defendants, former partial owners of BRIC, alleging that the defendants received fraudulent transfers from BRIC in violation of a number of sections of the Wisconsin Uniform Fraudulent Transfers Act ("WUFTA"). (*See* Docket #1).

The defendants moved for summary judgment on those claims and, on October 4, 2011, this Court entered an order granting summary judgment on four of the plaintiff's five claims. (*See* Docket #45). All of the dismissed claims were made under WUFTA. (*See, e.g.*, Docket #1, #45). The single claim that the Court left intact related to whether the defendants owed a fiduciary duty to the plaintiff. (*See, e.g.*, Docket #1, #45).

Following entry of that order, the plaintiff moved the Court to reconsider its summary judgment ruling on the plaintiff's first and third claims. (Docket #48, #50). The parties have now fully briefed the issue. (Docket #50, #51, #52). For the following reasons, the Court will deny the plaintiff's motion for reconsideration.

1.  Factual Background

The facts in this case are rather complicated, due to a number of simultaneous agreements that ultimately form the subject of this dispute. The facts are only complicated further by the plaintiff's motion for reconsideration, in which they argue that the Court should consider newly-presented evidence and related facts.

In an attempt to set forth the facts as clearly as possible, the Court will first address the agreements that existed between the entities in this case without addressing the parties' participation as members in each of the entities. After addressing the agreements, the Court will turn to the parties' membership in the multiple entities in this case.

   1.1   Agreements Between Executive Center III, Meieran, and BRIC

On November 1, 2007, the defendants entered into a transaction ("the Agreement") in which they received a 12.5% interest in BRIC. (Pl.'s Br. in Supp. Mot. for Reconsid. 2). The Agreement called for the 12.5% interest to be repurchased by March 1, 2008, for $250,000, plus 12% interest and a number of penalty charges if the repurchase did not occur before the March 1, 2008 deadline. (Pl.'s Br. in Supp. Mot. for Reconsid. 2). When repurchase did not occur prior to March 1, 2008, the penalty provisions took effect, resulting in the defendants being owed a total of $400,000 under the Agreement. (*See* Pl.'s Br. in Supp. Mot. for Reconsid. 2).

Shortly thereafter, BRIC entered into real estate contracts with the plaintiff. (Pl.'s Br. in Supp. Mot. for Reconsid. 2). The first contract called for BRIC to sell its principle asset, an office building, to the plaintiff. (Pl.'s Br. in Supp. Mot. for Reconsid. 2). The second contract required that, following the sale, BRIC would lease an office suite in that building from the plaintiff,

which would net the plaintiff approximately $150,000 in rent. (Pl.'s Br. in Supp. Mot. for Reconsid. 2).

However, prior to the finalization of those contracts, BRIC entered an agreement with the defendants to redeem the 12.5% interest in exchange for the $400,000 debt owed to the defendants under the Agreement. (Pl.'s Br. in Supp. Mot. for Reconsid. 2). Thus, after BRIC sold the office building to the plaintiff, BRIC used $400,000 of the sale proceeds to redeem the defendants' 12.5% interest. (Pl.'s Br. in Supp. Mot. for Reconsid. 2).

That $400,000 payment left BRIC without substantial assets, ultimately causing BRIC to default on its obligation to the plaintiff to rent office space. (Pl.'s Br. in Supp. Mot. for Reconsid. 2). On that basis, the plaintiff secured a $156,140.87 judgment against BRIC. (Pl.'s Br. in Supp. Mot. for Reconsid. 2).

However, the plaintiff also brought this suit against the defendants, arguing that the $400,000 payment from BRIC to the defendants was a fraudulent transfer in violation of a number of sections of WUFTA. (Pl.'s Br. in Supp. Mot. for Reconsid. 3).

The Court, in its October 4, 2011 summary judgment order, disagreed, finding that the $400,000 payment from BRIC to the defendants was in satisfaction of a claim that arose under the Agreement. (Order 9–11). Having found that the $400,000 payment was made in satisfaction of a $400,000 antecedent debt, and thus was of reasonably equivalent value to forgiveness of that debt, the Court found that the plaintiff's WUFTA claims failed. (Order 9–11).

1.2   Membership in BRIC

To be sure, the Court's finding of reasonably equivalent value—and thus lack of any WUFTA violation—rested upon the assumption that the

Agreement was valid. If the Agreement was invalid, then BRIC would not have owed the defendants $400,000. If that were the case, then BRIC's $400,000 transfer would have been made purely in exchange for the defendants' 12.5% membership interest—likely not reasonably equivalent to $400,000 in value and, thus, hypothetically constituting a violation of WUFTA that would entitle the plaintiff to judgment against the defendants for receipt of a fraudulent transfer.

As such, the plaintiff has requested that this Court reconsider its prior summary judgment order, arguing that newly presented evidence regarding membership shows that the Agreement was invalid.

The parties agree on a number of points in regard to membership. First, the parties agree that, prior to the Agreement, Paula Heyes held a membership interest in BRIC. (*See* Pl.'s Br. in Supp. Mot. for Reconsid. 3–4 (establishing that Paula Heyes entered into the Agreement to assign a membership interest in BRIC, thus implying that—at some point prior to entering that agreement—Paula Heyes held a membership interest)). In the proposed findings of fact presented to this Court at the summary judgment stage, the parties also agreed to the following pertinent facts:

1. through the Agreement, Paula Heyes assigned her 12.5% membership interest in BRIC to the defendants in exchange for $250,000;

2. through the Agreement, BRIC was required to pay the defendants a $250,000 liquidating distribution by March 1, 2008, along with 12% interest and penalties if the March 1, 2008 deadline was not complied with; and

3. the parties did not comply with the March 1, 2008 deadline and, thus, penalties applied, causing a total sum of $435,000 to be owed to the defendants.

(*See* Pl.'s Br. in Supp. Mot. for Reconsid. at 3–4). Thus, according to these agreed facts, so long as Paula Heyes had the authority to enter into the Agreement with the defendants, then the Agreement was valid and BRIC owed a $435,000 antecedent debt to the defendants. And, flowing from that fact, so long as BRIC owed a $435,000 antecedent debt to the defendants, then the defendants' receipt of $400,000 in satisfaction of that debt was of reasonably equivalent value and, therefore, not the receipt of a fraudulent transfer under WUFTA.

However, this understanding rests on the assumption that Paula Heyes had the authority to enter into the Agreement.

The plaintiff has now brought this motion for reconsideration arguing that, in fact, Paula Heyes did not have such authority, making the Agreement an *ultra vires* act, and thus invalid. (*See* Pl.'s Br. in Supp. Mot. for Reconsid. 8–10). Relying on a number of newly-presented documents, the plaintiff states that Paula Heyes had assigned a 10% interest to her husband, David Heyes, prior to her entering the Agreement with the defendants. (Pl.'s Br. in Supp. Mot. for Reconsid. 9). The plaintiff also informs the Court that the "10% interest was probably never transferred back" to Paula Heyes, and that the Agreement was made without David Heyes signature. (Pl.'s Br. in Supp. Mot. for Reconsid. 9). Thus, the plaintiff argues that David Heyes did not consent to the Agreement, making the Agreement and *ultra vires* act and, therefore, invalid. (Pl.'s Br. in Supp. Mot. for Reconsid. 9). Logically flowing from that contention is the argument that, if the Agreement was invalid, then the $435,000 antecedent debt was also invalid. That invalidity would thus

mean that BRIC's ultimate $400,000 transfer to the defendants was arguably not of reasonably equivalent value and was, therefore, a fraudulent transfer under WUFTA.[1]

2. Discussion

As noted above, the Court accepts the plaintiff's contention that if David Heyes owned 10% of BRIC at the execution of the Agreement and did not consent to the terms of the Agreement, then Paula Heyes' entering the Agreement was an invalid *ultra vires* act, making BRIC's $400,000 transfer fraudulent under WUFTA.

Thus, having established the legal significance of the facts and evidence the plaintiff now hopes to introduce, the ultimate question that the Court must answer is whether it should grant the plaintiff's motion for reconsideration based upon the newly-offered evidence.

Simply put, if the Court considers this new evidence, then it must overturn its prior grant of summary judgment. If Paula Heyes' entering the Agreement was *ultra vires*, then—from a legal standpoint—BRIC's $400,000 transfer would have been made in exchange for a 12.5% interest in BRIC, as opposed to having been made in satisfaction of an antecedent debt. As such, the reasonable equivalency of the $400,000 transfer to the 12.5% interest in BRIC would be an issue of material fact to be decided by a factfinder.

On the other hand, if the Court finds that it should disregard this new evidence, then its prior order of summary judgment may stand. The plaintiff does not quarrel with the Court's original analysis. Rather, the plaintiff accepts that the analysis in the Court's October 4, 2011 order is in fact correct,

---

[1] As the Court discusses below, the reasonable equivalency of the $400,000 transfer and the 12.5% BRIC interest exchanged by the defendants would be an issue of material fact to be decided by a factfinder.

unless the Court considers the newly-offered evidence calls into dispute the validity of the Agreement. (*See* Pl.'s Br. in Supp. Mot. for Reconsid. 8–11 (setting forth the plaintiff's argument that the newly-offered evidence should change the Court's analysis, but never arguing that the Court's original decision was incorrect)).

Thus, the Court turns to the primary issue of whether it should grant the plaintiff's motion for reconsideration, take into account newly-offered evidence, and consequently overturn its prior grant of summary judgment on the plaintiff's first and third claims.

### 2.1 Standard for Reconsideration

District courts have broad discretion to grant or deny motions for reconsideration. *Caisse Nationale de Credit Agricole v. CBI Industries*, 90 F.3d 1264, 1270 (7th Cir. 1996). A district court's decision on a motion for reconsideration will not be reversed on appeal "absent an abuse of that discretion." *Id.*

Despite that broad discretion, district courts should grant motions for reconsideration only in limited circumstances. That is because "'[m]otions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence.'" *Id.*, at 1269 (7th Cir. 1996) (quoting *Keene Corp. v. Int'l Fidelity Ins. Co.*, 561 F. Supp. 656, 665 (N.D. Ill. 1982), *aff'd*, 736 F.2d 388 (7th Cir. 1984); citing *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987)). As the plaintiff correctly states, reconsideration is appropriate only in circumstances "where there is (1) an intervening change in controlling law; (2) the availability of new evidence or an expanded factual record; or (3) a need to correct clear error [of fact or law] or to prevent manifest injustice." (Pl.'s Br. in Supp. Mot. for Reconsid. 8 (citing *Whitford v. Boglino*, 63 F.3d 527, 530 (7th Cir. 1995), *Geneva*

*International Corp. v. Petrof, Spol, S.R.O.*, 608 F. Supp. 2d 993, 997–98 (N.D. Ill. 2009), *Bank of Waunakee v. Rochester Cheese Sales*, 906 F.2d 1185, 1191 (7th Cir. 1990), *Rothwell Cotton Co.*, 827 F.2d at 251, *United States v. Petersen Sand & Gravel, Inc.*, 806 F. Supp. 1346, 1360 (N.D. Ill. 1992))).

> 2.2 Application of Reconsideration Standard to Plaintiff's Newly-Offered Evidence

Because the plaintiff has not argued that there has been any intervening change in the controlling law, the Court will look only to whether the plaintiff's newly-offered evidence qualifies for reconsideration under either the second or third of the above-listed circumstances.

> > 2.2.1 Availability of New Evidence or an Expanded Factual Record

Motions for reconsideration "'cannot in any case be employed as a vehicle to introduce new evidence that could have been adduced during the pendency of the summary judgment motion.'" *Caisse Nationale*, 90 F.3d at 1269 (quoting *Keene Corp.*, 561 F. Supp. at 665; citing *DeBruyne v. Equitable Life Assurance Soc'y*, 920 F.2d 457, 471 (7th Cir. 1990), *Manor Healthcare Corp. v. Guzzo*, 894 F.2d 919, 922 n. 4 (7th Cir. 1990)). To support such a motion, the moving party must show not only that: (1) the evidence is newly discovered; but also that, (2) "'it could not with reasonable diligence have discovered and produced such evidence'" while the summary judgment motion was pending. *Caisse Nationale*, 90 F.3d at 1269 (quoting *Englehard Indus., Inc. v. Research Instrumental Corp.*, 324 F.2s 347, 352 (9th Cir. 1963), *cert. denied*, 377 U.S. 923 (1964)). In other words, it is not enough to show only that one has obtained new evidence; rather, the party moving the Court for reconsideration must also show that the evidence was not reasonably available at the time the original summary judgment motion was pending.

The plaintiff cannot satisfy that requirement here. While the plaintiff has presented the Court with new evidence, the plaintiff has not offered a satisfactory explanation as to how or why the newly-offered evidence could not, with reasonable diligence, have been discovered and produced during the pendency of the original summary judgment motion. (Pl.'s Br. in Supp. Mot. for Reconsid. 8–10). To be sure, the plaintiff does offer new evidence that David Heyes may have owned a portion of BRIC at the time the Agreement was entered, and that he may not have consented to the Agreement. (Pl.'s Br. in Supp. Mot. for Reconsid. 8–9).

But that alone is not enough. In an attempt to justify its failure to initially produce this evidence, the plaintiff argues that "more than two years had passed between the production of the evidence in the bankruptcy litigation." (Pl.'s Br. in Supp. Mot. for Reconsid. 9). The plaintiff also informs the Court that "[i]t was only by an indirect path…that counsel was led back to these documents." (Pl.'s Br. in Supp. Mot. for Reconsid. 9). However, as far as the Court can tell, the documents were disclosed in discovery and in possession of the plaintiff during the pendency of the defendants' motion for summary judgment. In fact, rather than agreeing to the defendants' proposed findings of fact as related to Paula Heyes' entering the Agreement (*see* Pl.'s Br. in Supp. Mot. for Reconsid. 3–4), it seems that the plaintiff could have fairly easily (*and should have*) located these documents and disclosed them to the Court as evidence to support a denial of those proposed facts. With reasonable diligence, the plaintiff could have discovered and disclosed those documents to the Court while that motion was pending. Thus, given that the plaintiff had access to the documents at that time, its having unreasonably overlooked them is not adequate to justify this Court's reconsideration.

"A party seeking to defeat a motion for summary judgment is required to 'wheel out all its artillery to defeat it,'" and any "[b]elated factual or legal attacks are viewed with great suspicion." *Caisse Nationale*, 90 F.3d at 1270 (quoting *Employers Ins. of Wausau v. Bodi-Wachs Aviation Ins. Agency*, 846 F. Supp 677, 685 (N.D. Ill. 1994); citing *Ryan v. Chromalloy Am. Corp.*, 877 F.2d 598, 603–04 (7th Cir. 1989), *In re Oil Spill*, 794 F. Supp. 261, 267 (N.D. Ill. 1992), *aff'd*, 4 F.3d 997 (7th Cir. 1993), *Publishers Resource v. Walker-Davis Publications*, 762 F.2d 557, 561 (7th Cir. 1985), *Bally Export Corp. v. Balicar Ltd.*, 804 F.2d 398, 404 (7th Cir. 1986)). Here, it seems that, by its own unreasonable mistake, the plaintiff left its pistol at home before heading off to the duel. Absent some justification for that mistake, which the plaintiff has not presented, the Court will not grant the plaintiff a rematch.

### 2.2.2 Need to Correct Clear Error of Fact or Law or to Prevent Manifest Injustice

Having found that the availability of new evidence does not support the plaintiff's motion for reconsideration, the Court now turns to whether it should grant that motion in order to correct "clear" error or to prevent "manifest" injustice.

In the situation at hand, the Court does not believe that the newly-presented evidence shows that such a "clear" error of fact exists or that "manifest" injustice will result if the Court refuses to reconsider the matter. It is not, in fact, "clear" that David Heyes: (1) owned any portion of BRIC at the time the Agreement was entered; or that (2) David Heyes did not support such Agreement. Actually—to the contrary—the plaintiff openly admits that it is not clear that David Heyes held a membership interest at the time the Agreement was entered; the plaintiff twice states only that David Heyes "probably" or "likely" never reconveyed his interest to Paula Heyes. (Pl.'s Br.

in Supp. Mot. for Reconsid. 6, 9). Furthermore, the plaintiff presents no evidence that David Heyes did not actually consent to the Agreement. Looking only to the dealings between David and Paula Heyes, which consist of a joint filing of bankruptcy (Nordholm Aff., Ex. C) as well as the transfer of a 10% interest in BRIC for what appears to be no consideration (Nordholm Aff., Ex. B), it is clear that the two individuals are closely allied. While it cannot be said definitively that David Heyes consented to the Agreement, the plaintiff also has not shown any evidence to establish that he did not so consent. Thus, there is no "clear" error of fact that would be rectified by granting the plaintiff's motion for reconsideration.

Further, the Court does not believe that any "manifest" injustice will result if it denies the motion. Accepting the plaintiff's definition of "manifest" as "evident, clear, plain…" the Court finds that no clear injustice will be perpetrated by refusing to reconsider its initial order. (Pl.'s Br. in Supp. Mot. for Reconsid. 10 (citing *Webster's New Universal Unabridged Dictionary Deluxe Second Edition*, 1983)). The plaintiff argues that "[i]t should be evident, plain and obvious to one's understanding that it is wrong to dismiss Plaintiff's First and Third causes of action based on an act done in violation of state law." (Pl.'s Br. in Supp. Mot. for Reconsid. 11). But, the Court must again state that it does not believe that such a violation is in the least evident, plain, or clear from the newly-presented evidence. At best, that evidence draws into question whether the Agreement was invalid; but, such a conclusion is certainly not clear.

In reality, the Court finds it would be a much clearer injustice to strike an otherwise validly-entered contract on the purely legal-fictional grounds that David Heyes temporarily held a membership interest in BRIC at a time when his closely-related ally, Paula Heyes, with whom he appears to have

had a continuing close business relationship, entered that contract with the defendants. The terms of the contract, so far as the Court can tell, were fair. Thus, it would be just as much (if not more) of a clear injustice to now strike that contract on purely technical grounds, as it would be to find the contract invalid under state law based on the fairly flimsy, late-arriving evidence the plaintiff now offers.

3.  Conclusion

For these reasons, the Court concludes that it should deny the plaintiff's motion for reconsideration. The plaintiff has not offered any compelling reason why its newly-offered evidence qualifies for reconsideration under any of the limited circumstances acknowledged in this circuit's case law. Therefore, the Court denies the plaintiff's motion, leaving intact the Court's prior order granting summary judgment to the defendants on the plaintiff's first, second, third, and fifth claims.

Accordingly,

IT IS ORDERED that the plaintiff's motion for reconsideration (Docket #48) of the Court's October 4, 2011 order (Docket #45) be and the same is hereby DENIED.

Dated at Milwaukee, Wisconsin, this 23rd day of January, 2012.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge